**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

WHOLESALE MILLWORK, LLC, *

*Plaintiff*, *

v. * Civil Action No. RDB-25-03138

STEVEN R. BRALLIER, *

*Defendant*. *

* * * * * * * * * * * * *

## MEMORANDUM OPINION

In this contract action, Plaintiff Wholesale Millwork, LLC ("Plaintiff" or "Wholesale Millwork") alleges that Defendant Steven R. Brallier ("Defendant" or "Mr. Brallier") used his position of trust as former President and General Manager of Wholesale Millwork to take advantage of an internal accounting error that increased Mr. Brallier's individual membership interest in Wholesale Millwork to the financial detriment of Wholesale Millwork and its other members. *See* (ECF No. 1). On September 22, 2025, Wholesale Millwork initiated this action by filing in this Court a four-count Complaint against Mr. Brallier for breach of contract (Count I); declaratory judgment (Count II); breach of fiduciary duty (Count III); and unjust enrichment (Count IV).[1] (*Id.*). This Court has diversity jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a) and may exercise supplemental jurisdiction over Wholesale Millwork's state law claims pursuant to 28 U.S.C.§ 1367. *See* (ECF 1 ¶¶ 12–13).

[1] This case was originally assigned to Judge Rubin of this Court before being reassigned to the undersigned on July 24, 2026.

Presently pending before this Court are two motions: (1) Defendant's Motion to Dismiss for Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6) (ECF No. 15-1), and (2) Defendant's Motion to Dismiss for Failure to Join Necessary Parties under Federal Rule of Civil Procedure 12(b)(7) (ECF No. 16-1) (collectively, "Defendant's Motions" or "Motions to Dismiss"). Plaintiff responded to both Motions in a Consolidated Opposition (ECF No. 21), and Defendant has replied (ECF No. 24). The parties' submissions have been reviewed, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025).

For the reasons set forth below, Defendant's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim (ECF No. 15-1) is DENIED. Plaintiff's claims against Defendant for breach of contract, declaratory judgment, breach of fiduciary duty, and unjust enrichment shall proceed. *See* (ECF No. 1). Also as set forth below, Defendant's Rule 12(b)(7) Motion to Dismiss for Failure to Join Necessary Parties (ECF No. 16-1) is DENIED. Existing shareholders of Wholesale Millwork are not necessary parties to the present action, and this matter may proceed without their joinder.

## BACKGROUND

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Thus, except where otherwise indicated, the following facts are derived from Plaintiff's Complaint (ECF No. 1) and accepted as true for the purpose of Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) (ECF No. 15-1).

Unlike a motion to dismiss pursuant to Rule 12(b)(6), where "the 'general rule' is that evidence 'extrinsic to' the operative complaint cannot be considered," a district court deciding a Rule 12(b)(7) motion to dismiss "need not limit itself to the four corners of a complaint." *Peterson v. Harrah's NC Casino Company*, 169 F.4th 520, 524 (4th Cir. 2026) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), then citing Fed. R. Civ. Proc. 12(d)). Additional facts relevant to this Court's ruling on Defendant's Rule 12(b)(7) Motion from documents beyond the Complaint are identified accordingly and do not factor into this Court's analysis of Defendant's Rule 12(b)(6) Motion.

**I. Mr. Brallier's affiliation with Wholesale Millwork**

Plaintiff Wholesale Millwork is a closely held limited liability company ("LLC") incorporated under Maryland law. (ECF No. 1 ¶ 19). Since 2003, Wholesale Millwork has been engaged in the business of distributing high-quality building products to independent lumber yards in the Mid-Atlantic region. (*Id.*) Wholesale Millwork, Inc. (the "Wholesale Corporation") is a wholly-owned subsidiary of Wholesale Millwork. (*Id.* ¶ 20).

Defendant Steven R. Brallier served as President of the Wholesale Corporation and General Manager of Wholesale Millwork from 2016 to 2023.[2] (ECF No. 1 ¶¶ 1, 21). During his employment, Mr. Brallier came to own 21.2152% of the total membership interest in Wholesale Millwork. (*Id.* ¶ 21). Mr. Brallier held this membership interest in Wholesale Millwork until 2023, when Wholesale Millwork bought out the membership interests of certain

[2] There appears to be some inconsistency in the pleadings regarding the length of Mr. Brallier's tenure as General Manager of Wholesale Millwork. Plaintiff's Complaint states that Mr. Brallier served as General Manager of Wholesale Millwork from 2016 through December 2023, (ECF No. 1 ¶ 21), while Mr. Brallier's Motion to Dismiss for Failure to State a Claim indicates that he held this role from 2016 through December 2022 (ECF No. 15-1 at 3). For purposes of Defendant's Motion to Dismiss pursuant to Rule 12(b)(6), this Court will accept as true Plaintiff's assertion of the length of Mr. Brallier's employment as described in the Complaint. *See* (ECF No. 1 ¶ 21).

members in an effort to restructure the company and transition to new executive leadership. (*Id.* ¶ 22).

## II. The Redemption Agreement

In connection with the planned buyout of Mr. Brallier's membership interest, on or around January 1, 2023, Wholesale Millwork and Mr. Brallier entered into a Membership Rights & Interests Redemption & Liquidation Agreement ("Redemption Agreement"), *see* (ECF No. 4-1 at 2), in which Wholesale Millwork agreed to purchase all of Mr. Brallier's membership interests in the company. (ECF No. 1 ¶ 23).

To calculate the monetary value of Mr. Brallier's 21.2152% membership interest in Wholesale Millwork, the Redemption Agreement incorporated by reference the valuation method set forth in Wholesale Millwork's Operating Agreement dated September 28, 2018 ("2018 Operating Agreement"). (*Id.* ¶ 24). Specifically, the 2018 Operating Agreement defined the valuation formula as follows:

> "Value of the Member's Membership Rights & Interests" and/or "Value of the Member's Membership Rights" in the Company shall mean and be determined by
>
> (i) taking the average of annual earnings before income taxes, depreciation and amortization of the Corporation, Wholesale Millwork, Inc., during its last five (5) complete fiscal years prior to the event giving rise to the purchase as shown on the Corporation, Wholesale Millwork, Inc's, Financial statements (or the average annual earnings before income taxes, depreciation and amortization of the Corporation, Wholesale Millwork, Inc., if it has been in existence for a period of less than five (5) complete fiscal years prior to the event giving rise to the purchase), and multiplying that average annual earnings amount by (5) and subtracting from the product so obtained any Redemption Debt of the company, and
>
> (ii) multiply the amount determined in subparagraph (i) by the percentage of ownership of the Company in the issued and outstanding shares of

stock of the Corporation as of the applicable event giving rise to the purchase, and

(iii) multiplying the amount determined in subparagraph (ii) by the Member's percentage of Economic Interests set forth after the Member's name on Exhibit A, as amended from time to time, as of the event giving rise to the purchase, and

(iv) multiplying the amount determined in subparagraph (iii) by the Vested Percentage of the Member.

"Vested Percentage of the Member" shall be determined and based on the number of full calendar months of employment of the Member by the Corporation using the schedule hereafter set forth:

| # of Full Calendar Months | Vested Percentage of the Member |
|---|---|
| 0-12 | 0% |
| 13-24 | 10% |
| 25-36 | 20% |
| 37-48 | 50% |
| 49-60 | 65% |
| 61-72 | 80% |
| 73 and thereafter | 100% |

(ECF No. 1 ¶ 26).

Importantly and as relevant here, the valuation method set forth in the Operating Agreement provided for the subtraction of Wholesale Millwork's redemption debt from the overall valuation. (*Id.* ¶ 25).

## III. Internal accounting error affects Mr. Brallier's interest valuation

Prior to the January 2023 execution of the Redemption Agreement between Wholesale Millwork and Mr. Brallier, Wholesale Millwork alleges that Mr. Brallier falsely represented to the company the value of his membership interest through communications on or about September 8, 2022. (*Id.* ¶ 27). Specifically, Mr. Brallier allegedly represented to Wholesale

Millwork that the value of a single membership interest in the company was worth $294,068, and that the total value of his 21.2152% interest in the company was worth $6,238,711. (*Id.*). Wholesale Millwork contends that Mr. Brallier was in a position to know that the value of his membership interest was not worth $6,238,711 if calculated correctly pursuant to the method set forth in the Operating Agreement. (*Id.*).

Wholesale Millwork alleges that Mr. Brallier's misrepresentation about the value of his interest was based on an error by Wholesale Millwork's internal accountant. (*Id.* ¶ 28). When calculating the value of Mr. Brallier's membership interest, Wholesale Millwork's existing redemption debt was incorrectly *added* to the value of the company, when it should have instead been *subtracted* from the value of the company. (*Id.*). This error was identified on the accountant's calculation worksheets as a line item labeled "acquisition debt salary." (*Id.*). The improper value added to the appraisal of Wholesale Millwork for the acquisition debt salary was a five-year average of $1,287,925. (*Id.* ¶ 29). Pursuant to subsection (i) of the valuation method set forth in the Operating Agreement, a multiplier of five was then applied to this value, for a total of $6,439,627 in allegedly erroneous additions to the total value of Wholesale Millwork during the valuation of Mr. Brallier's interest. (*Id.*).

Had the calculation been completed properly, according to Wholesale Millwork, the redemption debt would have been subtracted from the company's value rather than added, and the value of Mr. Brallier's membership interest would have been calculated as $4,872,028.25. (*Id.* ¶ 30). Instead, Wholesale Millwork alleges that the accounting error resulted in an erroneous $1,336,683.18 increase in the valuation of Mr. Brallier's membership interest, for a total valuation of $6,238,711. (*Id.* ¶¶ 27, 31).

Wholesale Millwork contends that this accounting mistake should have been clear and obvious to Mr. Brallier for several reasons. (*Id.* ¶¶ 31–33). First, the accounting error did not result in a nominal increase in the value of Mr. Brallier's interest as one may observe in the case of a rounding error, but rather it enlarged his stake by over $1.3 million dollars. (*Id.* ¶ 31). Second, Wholesale Millwork alleges that Mr. Brallier was in a position to know of the accounting mistake that increased the value of his membership interest by virtue of his positions of trust and authority at Wholesale Millwork and the Wholesale Corporation. (*Id.* ¶ 32). Wholesale Millwork asserts that Mr. Brallier's role as President of the Wholesale Corporation and General Manager of Wholesale Millwork at the time of the valuation afforded Mr. Brallier with specialized knowledge of the company that would have instantly alerted him to the valuation error, including information about Wholesale Millwork's financial standing, accounting, and its method for calculating membership interests under the 2018 Operating Agreement. (*Id.*). Wholesale Millwork contends that Mr. Brallier occupied a fiduciary or confidential role with respect to Wholesale Millwork and, as such, he should have consulted an outside accounting firm to verify the terms of the buyout. (*Id.* ¶ 33). Instead, Mr. Brallier continued with his separation from the company and did not raise the accounting error to the attention of Wholesale Millwork or its remaining members. (*Id.*).

## IV. Procedural History

On September 22, 2025, Wholesale Millwork initiated this lawsuit by filing in this Court[3] a four-count Complaint (ECF No. 1) against Mr. Brallier alleging claims for breach of

[3] As explained above, this case was originally assigned to Judge Rubin of this Court before being reassigned to the undersigned on July 24, 2026.

contract (Count I); declaratory judgment (Count II)[4]; breach of fiduciary duty (Count III); and unjust enrichment (Count IV). *See* (ECF No. 1). On October 21, 2025, Mr. Brallier filed a Motion for Extension of Time to File a Response to the Complaint in which he requested that his previous November 6, 2025, deadline be extended 30 days, to December 8, 2025. (ECF No. 11). Plaintiff's counsel consented to this request (ECF No. 11 ¶ 5), and Judge Rubin of this Court granted Mr. Brallier's Motion on October 22, 2025 (ECF No. 14).

On December 8, 2025, in lieu of filing an Answer, Mr. Brallier filed a Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 15-1), and a Motion to Dismiss for Failure to Join Necessary Parties pursuant to Federal Rule of Civil Procedure 12(b)(7) (ECF No. 16-1). Plaintiff responded in a Consolidated Opposition (ECF No. 21), and Defendant replied (ECF No. 24). This matter is now ripe for review.

## STANDARDS OF REVIEW

### I. Motion to Dismiss for Failure to State a Claim

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. "'[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of

---

[4] Plaintiff specifically seeks declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*. The Federal Declaratory Judgment Act "is a procedural statute that creates no substantive rights." *First Nationwide Mortg. Corp. v. FISI Madison, LLC*, 219 F. Supp. 2d 669, 672 n.1 (D. Md. 2002) (citations omitted). Accordingly, federal courts in the Fourth Circuit evaluate declaratory judgment actions as procedural claims for relief under federal law. *See, e.g.*, *First Nationwide Mortg. Corp.*, 219 F. Supp. 2d at 672 n.1; *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n.3 (4th Cir. 2013) (construing under federal law a state law claim for declaratory judgment removed to federal court). Plaintiff's remaining Counts I, III, and VI seek relief pursuant to Maryland law.

defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action . . . ." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. 9 Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

In considering a motion to dismiss, a court's evaluation is generally limited to allegations contained in the complaint. *E.g., Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165 66 (4th Cir. 2016). However, courts may also consider documents explicitly incorporated into the complaint by reference. *See, e.g., id.* at 166 (citing *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). In addition, a court "may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's

authenticity." *Id.* (citing *Sec'y of State for Def. v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted).

## II. Motion to Dismiss for Failure to Join Necessary Parties

Federal Rule of Civil Procedure 12(b)(7) authorizes the dismissal of a complaint for failure to join a required party under Rule 19. Under Federal Rule of Civil Procedure 19(a), a non-party must be joined as a party to the litigation if their joinder would not deprive the federal court of subject matter jurisdiction and: (1) the court cannot accord complete relief among the existing parties in the non-party's absence, or (2) the non-party claims an interest in the action such that disposing of the action in their absence may (i) impede the non-party's ability to protect their interest or (ii) leave an existing party subject to a substantial risk of incurring multiple inconsistent obligations due to that non-party's interest. Fed. R. Civ. Proc. 19(a).

Unlike a motion to dismiss pursuant to Rule 12(b)(6), a district court ruling on a Rule 12(b)(7) motion "need not limit itself to the four corners of the complaint." *Peterson*, 169 F.4th at 524 (citing Fed. R. Civ. Proc. 12(d)). Indeed, in the Rule 12(b)(7) context, a district court "may consider materials beyond the pleadings and make factual findings based on them." *Id.* (citing 5C Wright & Miller's Federal Practice & Procedure § 1359 & n.25 (3d ed. 1998) (updated Nov. 2025)).

In deciding whether to dismiss a complaint pursuant to Rule 12(b)(7), a district court must engage in the two-step inquiry set forth by Rule 19. *Id.* at 525 (citing *Nat'l Union Fire Ins.*

*Co. of Pittsburgh v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 249 (4th Cir. 2000)). "First, the district court must determine whether the party is 'necessary' to the action under Rule 19(a)." *Id.* If the court determines that the party is "necessary," the court must then inquire whether the party is "indispensable" under Rule 19(b). *Williams v. Martorello*, 143 F.4th 555, 561 (4th Cir. 2025) (quoting *Gunvor SA v. Kayablian*, 948 F.3d 214, 218 (4th Cir. 2020)).

Determining whether a non-party is both necessary and indispensable is "a fact-specific inquiry that considers various factors relevant to assessing the fairness of proceeding without [the non-party]." *Martorello*, 143 F.4th at 561 (citing *Nat'l Union Fire Ins. Co.*, 210 F.3d at 250). "Neither prong of Rule 19 is to be applied as a 'procedural formula.'" *Peterson*, 169 F.4th at 525 (quoting *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 951 (4th Cir. 2020)). Instead, the court "must proceed paradigmatically, 'examin[ing] the facts of the particular controversy to determine the potential for prejudice to all parties, including those not before it.'" *Nat'l Union Fire Ins. Co.*, 210 F.3d at 250 (quoting *Teamsters Loc. Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 918 (4th Cir. 1999)). "If the nonjoined party is necessary and indispensable to the action, but joinder would destroy subject matter jurisdiction, the court must dismiss the action." *Gunvor SA*, 948 F.3d at 218–19 (citing *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999)). However, "[c]ourts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result." *Meade*, 186 F.3d at 441.

## ANALYSIS

### I. Defendant's Motion to Dismiss for Failure to State a Claim

As detailed below, Plaintiff has set forth sufficient facts to state a claim for breach of contract (Count I); declaratory judgment (Count II); breach of fiduciary duty (Count III); and unjust enrichment (Count VI). Accordingly, Defendant's Motion to Dismiss for Failure to State a Claim (ECF No. 15-1) is DENIED. Plaintiff's claims against Defendant shall proceed. *See* (ECF No. 1 at 1).

#### A. Count I – Breach of Contract

In Count One of its Complaint (ECF No. 1), Wholesale Millwork alleges that the parties entered into a Redemption Agreement for Wholesale Millwork to buy out Mr. Brallier's membership interest using a mandatory valuation formula contained in the 2018 Operating Agreement. (ECF No. 1 ¶¶ 23–32). It is further alleged that the 2018 Operating Agreement was breached when, by mutual mistake or unilateral mistake accompanied by Mr. Brallier's inequitable conduct, the mandatory valuation formula was not properly applied in the Redemption Agreement, resulting in a $1,336,683.18 increase in the value of Mr. Brallier's membership interest. (*Id.* ¶¶ 34–43). Wholesale Millwork seeks reformation[5] of the Redemption Agreement to incorporate the valuation formula contained in the 2018 Operating Agreement. (*Id.* at 9).

---

[5] Plaintiff seeks reformation as a form of relief on its breach of contract claim under Count One. (ECF No. 1 at 9). Defendant challenges Plaintiff's entitlement to reformation. (ECF No. 15-1 at 11–15). However, because reformation is requested as a form of relief rather than set off as a separate claim in the Complaint, this Court does not inquire whether Plaintiff has sufficiently pleaded entitlement to reformation. *See Tate v. Am. General Life Ins. Co.*, 627 F. Supp. 3d 480, 500–01 (D. Md. 2022) (analyzing plaintiff's claims for reformation and recission under Rule 12(b)(6) pleading standards where reformation and recission were listed as Counts VII and VIII of the complaint).

Under Maryland law,[6] the elements of a claim for breach of contract are "contractual obligation, breach, and damages." *Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 307 (4th Cir. 2020) (quoting *Kumar v. Dhanda*, 198 Md. App. 337, 345, 17 A.3d 744 (2011)). In his Rule 12(b)(6) Motion to Dismiss, Mr. Brallier essentially challenges all three elements of this claim. (ECF No. 15-1 at 7–10). Specifically, Mr. Brallier contends that the mandatory valuation formula set forth in the 2018 Operating Agreement was not expressly incorporated into the Redemption Agreement by reference, and absent incorporation, there was no obligation in the 2018 Operating Agreement that he could have breached by virtue of accepting the inflated redemption value. (*Id.* at 8). With respect to breach, Mr. Brallier emphasizes that the mandatory valuation formula is listed as a defined term 2018 Operating Agreement and that no other provision of the Agreement obligates members to sell their shares at the value calculated by the formula. (*Id.* at 8–9). As Mr. Brallier argues that the initial valuation of his membership interest was not subject to the valuation formula and therefore was correct, he is, in effect, arguing that Wholesale Millwork has not sustained damages. (*Id.* at 7–10).

[6] As a threshold matter, where, as here, a plaintiff alleges a state law claim in federal court based on diversity jurisdiction, federal courts follow the doctrine set forth in *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Under the *Erie* doctrine, a federal court sitting in diversity applies federal procedural law and the substantive law of the forum in which the court sits. *See Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n.3 (4th Cir. 2013). For purposes of the *Erie* analysis, choice of law constitutes substantive law such that this Court applies the choice-of-law principles of Maryland. *See Koppers Performance Chems., Inc. v. Argonaut-Midwest Ins. Co.*, 105 F.4th 635, 641 n.4 (4th Cir. 2024). In contract actions, Maryland adheres to the rule of *lex loci contractus*, meaning it applies the substantive law of the state where the contract was formed. *E.g., Brownlee v. Liberty Mut. Fire Ins. Co.*, 456 Md. 579, 584–85, 175 A.3d 697 (2017). Here, although neither party raises the issue, it appears that both the 2018 Operating Agreement and the Redemption Agreement were likely formed in Maryland, given that Wholesale Millwork is a Maryland-based LLC. *See* (ECF No. 4 at 4 (noting Wholesale Millwork is a Maryland limited liability company); ECF No. 4-1 at 2 (same)). In any event, both Agreements expressly indicate that Maryland law governs, and no party appears to challenge that. *See* (ECF No. 4 at 28 ("Any suit involving any dispute or matter arising under this Agreement may only be brought in the United States District Court for the District of Maryland or any Maryland state court . . . ."); ECF No. 4-1 at 9 ("[T]his Agreement shall be governed and construed under the laws of the State of Maryland.")).

The interpretation of a contract is "ordinarily a question of law for the court," *Grimes v. Gouldmann*, 232 Md. App. 230, 235, 157 A.3d 331, (2017), as is the question of whether contract terms are ambiguous, *Calomiris v. Woods*, 353 Md. 425, 434, 727 A.2d 358 (1999). When interpreting a contract, courts determine "what a reasonable person in the position of the parties would have meant at the time it was effectuated." *General Motors Acceptance v. Daniels*, 303 Md. 254, 261, 492 A.2d 1306 (1985). This inquiry is generally limited to the four corners of the agreement. *Walton v. Mariner Health of Maryland, Inc.*, 391 Md. 643, 660, 894 A.2d 584 (2006). The language of disputed contractual provisions must be read "in context, which includes not only the text of the entire contract but also the contract's character, purpose, and 'the facts and circumstances of the parties at the time of execution.'" *Credible Behavioral Health, Inc. v. Johnson*, 466 Md. 380, 394, 220 A.3d 303 (2019) (quoting *Ocean Petroleum Co. v. Yanek*, 416 Md. 74, 88, 5 A.3d 683 (2010)). However, it is "improper for the court to rewrite the terms of a contract, or draw a new contract for the parties, when the terms thereof are clear and unambiguous." *Calomiris*, 353 Md. at 445, 727 A.2d 358 (citing *Canaras v. Lift Truck Servs.*, 272 Md. 337, 350, 322 A.2d 866 (1974)).

First, the parties dispute the relationship between the Redemption Agreement and the 2018 Operating Agreement. Wholesale Millwork contends that the valuation of Mr. Brallier's membership interest in the Redemption Agreement was subject to the mandatory valuation formula set forth in the 2018 Operating Agreement. (ECF No. 21 at 5). Mr. Brallier counters that the 2018 Operating Agreement was not expressly incorporated into the Redemption Agreement, and as such, the 2018 Operating Agreement does not obligate members to sell their interest for the value calculated by the mandatory valuation formula. (ECF 15-1 at 8–9).

As explained above, when deciding a Motion to Dismiss pursuant to Rule 12(b)(6), a court may consider documents integral to the complaint or expressly incorporated into the complaint by reference, so long as their authenticity is not disputed. *See Goines*, 822 F.3d at 166 (citing *Tellabs*, 551 U.S. at 322, and *Trimble Nav.*, 484 F.3d at 705). Here, the Redemption Agreement and 2018 Operating Agreement are discussed at length in Wholesale Millwork's Complaint (ECF No. 1), and it does not appear that Mr. Brallier disputes the authenticity of the documents. As such, this Court will consider those documents in its analysis.

Wholesale Millwork's position is supported by several provisions in the Redemption Agreement and the 2018 Operating Agreement. Looking at the 2018 Operating Agreement, Section 1 defines "Value of a Member's Membership Rights & Interests" through a detailed valuation formula which takes into account Wholesale Millwork's annual earnings, the company's redemption debt, and the percentage of the redeeming member's interest in the company. (ECF No. 4 at 8). Though styled as a defined term, it appears that the purpose of this formula is to set forth a method for calculating the value of a member's ownership interest in the event of redemption. This conclusion is supported by the directive which appears after the defined term, namely, that the "Value of a Member's Membership Rights & Interests . . . in the Company *shall mean and be determined by*," suggesting that the following formula should govern the valuation of a member's interest for purposes of redemption. (*Id.*). Similarly, Section 6.2 of the 2018 Operating Agreement provides that Wholesale Millwork "shall" have the option to "purchase from the withdrawing member all of his Membership Rights and Interests . . . at and for a purchase price equal to the Value of the Member's Membership Rights as defined and determined in Section 1 of this Agreement." (*Id.* at 21). These two

provisions, when read together, appear to require application of the formula in Section One to the valuation of a member's interest in the context of a company buyout.

Turning to the Redemption Agreement, Mr. Brallier correctly notes that there is no provision which expressly incorporates the 2018 Operating Agreement or its mandatory valuation formula, nor does the Redemption Agreement expressly dictate application of the valuation formula to the valuation of Mr. Brallier's membership interest. (ECF No. 15-1 at 10); *see generally* (ECF No. 4-1). In response, Wholesale Millwork directs the Court's attention to Section 4.6 of the Redemption Agreement, which states that "[t]he execution, acknowledgement, sealing, delivery, and performance of this Agreement by the Company and consummation of the transactions contemplated by the [Redemption] Agreement will not, to the knowledge of the Company . . . conflict with . . . [or] result in the breach or termination of any provision of . . . [the] Company's . . . Operating Agreement." (ECF No. 21 at 8; ECF No. 4-1 at 5). Wholesale Millwork contends that this provision "confirms [] the Redemption Agreement was intended to operate consistently with, not in derogation of, the mandatory valuation formula in the Operating Agreement." (ECF No. 21 at 8).[7]

Viewed in the light most favorable to the Plaintiff, as the Court must at this stage, Section 4.6 of the Redemption Agreement suggests that the Redemption Agreement was not intended to operate independently of the 2018 Operating Agreement, even in the absence of

[7] In further support of its position, Wholesale Millwork also directs this Court's attention to three additional references to the 2018 Operating Agreement in the Redemption Agreement: sections 3.1, 3.5, and 4.1. (ECF No. 21 at 9); *see also* (ECF No. 4-1 at 2 (establishing that Mr. Brallier held his membership interest "free and clear of any and all . . . encumbrances of every nature whatsoever, excluding, however, those that may be set forth in the operating agreement of the Company"); *id.* at 3 ("[O]ther than the Operating Agreement . . . there are no contracts or agreements relating to the Company to which [Mr. Brallier] is a party."); *id.* at 3–4 ("[A] complete and correct copy of the Company's Articles of Organization and Operating Agreement, as amended to the date of this Agreement, have been provided to [Mr. Brallier].").

express incorporation. Alternatively, the discrepancy between the provisions of the 2018 Operating Agreement and the Redemption Agreement could indicate drafting errors in reducing the parties' intentions for the Redemption Agreement to writing, which Plaintiff elsewhere alleges. *See* (ECF No. 1 ¶ 38 (alleging mutual mistake)). In either case, these competing interpretations conflict with Mr. Brallier's assertion that the mandatory valuation formula was not incorporated into the Redemption Agreement and create a factual dispute as to whether the formula truly governed valuation of his interest during the buyout. Under Maryland law, "[t]he construction of a contract is a question of fact which, if disputed, is not susceptible of resolution under a motion to dismiss for failure to state a claim." *Horlick v. Capital Women's Care, LLC*, 896 F. Supp. 2d 378, 394 (D. Md. 2011) (quoting *Wolman v. Tose*, 467 F.2d 29, 34 (4th Cir. 1972)). Accordingly, this factual dispute precludes dismissal, and discovery will be necessary to determine the proper interpretation of the agreements at issue.

Although this Court reaches its conclusion on the first element of the contract claim, a similar result would obtain with respect to the parties' arguments concerning breach and damages. Whether Mr. Brallier breached the 2018 Operating Agreement's mandatory valuation formula turns, at least in part, on whether the Redemption Agreement actually required use of the formula to calculate the value of his interest. Put differently, whether a breach occurred here cannot be decided without first determining whether Mr. Brallier was truly subject to an obligation arising from the 2018 Operating Agreement. As explained above, that is a factual question which cannot be decided on a Rule 12(b)(6) Motion to Dismiss for failure to state a claim.

Taking the well-pleaded allegations in the Complaint as true, Wholesale Millwork has plausibly alleged all three elements of a breach of contract claim. Wholesale Millwork has alleged that the valuation of Mr. Brallier's membership interest was required to be calculated by a mandatory valuation formula set forth in the company's 2018 Operating Agreement. (ECF No. 1 ¶¶ 24–26). It asserts that the formula was misapplied, that Mr. Brallier had knowledge of the miscalculation, and that Mr. Brallier failed to disclose the miscalculation prior to the parties' execution of the Redemption Agreement. (*Id.* ¶¶ 27–33). Finally, it contends that the company has incurred damages in the amount of at least $1,336,683 by virtue of the miscalculation of Mr. Brallier's membership interest. (*Id.* ¶¶ 30–31). Accordingly, Mr. Brallier's Rule 12(b)(6) Motion to Dismiss (ECF No. 15-1) is DENIED as to Count One.

**B. Count II – Declaratory Judgment**

Count One of Wholesale Millwork's Complaint alleges breach of contract under Maryland law, while Count Two seeks declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.* (ECF No. 1 ¶¶ 34–50). Wholesale Millwork seeks three specific declarations in Count Two.[8] (*Id.* at 10–11). First, Wholesale Millwork seeks a declaration that the correct redemption price for Mr. Brallier's membership interests is $4,872,028.25; second, that all payments to Mr. Brallier premised upon the allegedly inflated $6,238,711 figure are overpayments which Wholesale Millwork is entitled to recover; and third, that Wholesale Millwork is entitled to recover or offset any overpayments, as well as interest on those overpayments, if any, against future payment obligations to Mr. Brallier. (*Id.*). In the pending

[8] In addition to the three specific declarations sought under Count II, Wholesale Millwork also requests "exemplary damages in an amount sufficient to promote fairness and justice as a matter of public policy and to deter Brallier and other individuals or entities from engaging in similarly willful and malicious conduct in the future," reasonable attorneys' fees, and pre- and post-judgment interest on all sums awarded. (ECF No. 1 at 10–11).

Motion to Dismiss for Failure to State a Claim (ECF No. 15), Mr. Brallier seeks dismissal of Count Two on the ground that it is duplicative of Wholesale Millwork's breach of contract claim in Count One. (ECF No. 15-1 at 15–16). As further explained below, the Court concludes that Wholesale Millwork's request for declaratory judgment under Count Two is not duplicative of its breach of contract claim under Count One. Accordingly, Mr. Brallier's Rule 12(b)(6) Motion to Dismiss (ECF No. 15-1) is DENIED as to Count Two.

Under the Declaratory Judgment Act ("DJA"), "a district court, in a case or controversy otherwise within its jurisdiction, 'may declare the rights and other legal relations of any interested party seeking such declaration, whether or not other relief is or could be sought.'" *Penn-Am Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004) (quoting 28 U.S.C. § 2201(a)).[9] The Fourth Circuit has set forth three factors district courts must consider when deciding whether declaratory judgment is appropriate: "(1) the complaint alleges an 'actual controversy' between the parties 'of sufficient immediacy and reality to warrant issuance of a declaratory judgment'; (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction." *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004) (citing 28 U.S.C. § 2201, and *Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994)). "[A] declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'"

[9] For the purposes of the Declaratory Judgment Act, a case is "otherwise within [a federal court's] jurisdiction" if the court has independent subject matter jurisdiction (for example, federal question jurisdiction, 28 U.S.C. § 1331, or diversity jurisdiction, 28 U.S.C. § 1332) over the case. *See Elec. Motor.*, 235 F. Supp. 3d at 793; *Volvo Const. Equip.*, 386 F.3d at 592.

*Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937)). However, "[w]hen declaratory relief would be duplicative of claims already alleged, dismissal is warranted." *Chevron U.S.A., Inc. v. Apex Oil Co., Inc.*, 113 F. Supp. 3d 807, 824 (D. Md. 2015) (quoting *Sharma v. OneWest Bank, FSB*, No. DKC-11-834, 2011 WL 5167762, at *6 (D. Md. Oct. 28, 2011)).

Construing the allegations contained in the Complaint (ECF No. 1) in the light most favorable to the Plaintiff, the Complaint readily satisfies all three predicates for a declaratory judgment claim, and the requested relief is not duplicative of that sought under Count One.

First, the Complaint plainly alleges an "actual controversy" in the form of a contractual dispute between Wholesale Millwork and Mr. Brallier over the Redemption Agreement. *See Volvo Const. Equip.*, 386 F.3d at 592 ("A case meets the actual controversy requirement only if it presents a controversy that qualifies as an actual controversy under Article III of the Constitution."); *see also id.* at 593 ("For a controversy to exist for declaratory judgment purposes, however, the situation need not present a federal cause of action; if the parties are diverse, a federal court may possess subject matter jurisdiction over a state-law contract dispute."). Second, this Court has an independent basis for jurisdiction, as the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties. (ECF No. 1 ¶¶ 10–12; ECF No. 1 at 9, 12, 13); *see also* 28 U.S.C. § 1332. Third, this Court would not abuse its discretion in exercising its declaratory judgment jurisdiction here. While it is true that a district court with declaratory judgment jurisdiction may nonetheless decline to

entertain the action, the court must have a "good reason" for doing so.[10] *Volvo Const. Equip.*, 386 F.3d at 594 (quoting *Cont'l Cas. Co.*, 35 F.3d at 965). Where, as here, a declaratory judgment would serve the purpose of clarifying and settling the contractual rights and legal obligations of the parties under the agreements at issue, such a judgment is appropriate as it serves a "useful purpose," and will "afford relief from [] uncertainty" as this case proceeds. *See Volvo Const. Equip.*, 386 F.3d at 594; *Poston*, 88 F.3d at 256.

In addition to meeting the three predicates for a declaratory judgment claim, the relief requested by Wholesale Millwork under Count II is not duplicative of the relief requested for its breach of contract claim under Count I. Mr. Brallier cites this Court's opinion in *John M. Floyd & Assocs. v. Howard Bank*, No. RDB-18-2887, 2019 WL 1755968 (D. Md. Apr. 18, 2019) as support for his contention of duplicity. However, there is a crucial difference between this case and *Floyd.* In *Floyd*, the plaintiff asked this court to declare that the defendant was in breach of the operative agreement and owed monetary damages to Plaintiff. 2019 WL 1755968 at *4. In doing so, Plaintiff, in essence, asked this Court to decide the breach of contract issue such that the Plaintiff's declaratory judgment claim did "not seek[] to establish anything that the breach of contract claim [would] not address." *Id.* Under those circumstances, the declaratory judgment claim was duplicative.

Here, in contrast to *Floyd*, Plaintiff seeks a declaratory judgment to clarify its rights and obligations under the Redemption Agreement—not to declare that Mr. Brallier is presently in breach. Employed in this manner, Plaintiff's declaratory judgment claim is a valid alternative

[10] Indeed, the Fourth Circuit has opined that a district court is "*obliged* to rule on the merits of a declaratory judgment action when declaratory relief 'will serve a useful purpose in clarifying and settling the legal relations in issue,' and 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Volvo. Const. Equip.*, 386 F.3d at 594 (quoting *Quarles*, 92 F.2d at 325) (emphasis added).

to its breach of contract claim and may serve a useful purpose in expediting the resolution of this dispute. *See* Fed. R. Civ. P. 57 ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."). In addition and as noted above, a declaratory judgment under these circumstances could remove some uncertainty as this case proceeds to final judgment. For example, a declaratory judgment could determine whether the Redemption Agreement incorporated the formula for calculating members' interests contained in Wholesale Millwork's Operating Agreement, without determining whether the initial valuation of Mr. Brallier's interest, if incorrect, was the result of breach. A decision of this nature would narrow the issues and remove some uncertainty over the accuracy of the current payment schedule while still permitting Wholesale Millwork to proceed on its reformation theory for breach of contract. In such circumstances, a declaratory judgment would plainly serve a "useful purpose" and would not constitute a premature determination of Plaintiff's breach of contract claim. Accordingly, Mr. Brallier's Rule 12(b)(6) Motion to Dismiss (ECF No. 15-1) is hereby DENIED as to Count Two.

**C. Count III – Breach of Fiduciary Duty**

Count Three of Wholesale Millwork's Complaint alleges breach of fiduciary duty in violation of Maryland law. (ECF No. 1 ¶¶ 51–55). "[A[ fiduciary duty is, in general, a duty to act for the benefit of another on matters within the scope of the parties' relationship." *Plank v. Cherneski*, 469 Md. 548, 601, 231 A.3d 436 (2020) (quoting Restatement (Third) of Torts § 16 cmt. a). To establish a breach of fiduciary duty as an independent cause of action under Maryland law, a plaintiff must show: "(i) the existence of a fiduciary relationship; (ii) breach of the duty owed by the fiduciary to the beneficiary; and (iii) harm to the beneficiary." *Id.* at 599,

231 A.3d 426 (quoting *Froelich v. Erickson*, 96 F. Supp. 2d 507, 526 (D. Md. 2000)). A claim for breach of fiduciary duty "may be pleaded without limitation as to whether there is another viable cause of action to address the same conduct." *Id.* at 598.

"[F]iduciary relationships can be created by common law, by statute, or by contract, and can have different characteristics." *Id.* Common examples of fiduciary relationships include "those between trustees and beneficiaries, agents and principals, directors and corporations, lawyers and clients, [] guardians and wards, [and] the relationship among partners." *Id.* at 598. In addition, under Maryland law, "managing members of an LLC owe common law fiduciary duties to the LLC and to the other members based upon the fiduciary relations governing principles of agency." *Id.* at 625.

Here, the Complaint (ECF No. 1) plausibly alleges all three elements of a claim for breach of fiduciary duty. First, Plaintiff alleges that a fiduciary relationship existed between Wholesale Millwork and Mr. Brallier at the time the redemption price was calculated and the Redemption Agreement was entered by virtue of Mr. Brallier's role as the President of the Wholesale Corporation, as General Manager of Wholesale Millwork, and as a member of Wholesale Millwork. (ECF No. 1 ¶ 52). Plaintiff asserts that, due to these competing roles, Mr. Brallier owed fiduciary duties of loyalty, candor, and good faith to Wholesale Millwork, the Wholesale Corporation, and other members of Wholesale Millwork. (*Id.*). Second, Plaintiff contends that Mr. Brallier breached these fiduciary duties by "(a) not verifying the true value of his membership interests; (b) accepting inflated redemption payments stemming from the accounting error . . . ; and (c) failing to disclose to Wholesale Millwork that the redemption price was premised on an erroneous calculation that . . . overcompensated him." (*Id.* ¶ 53).

Plaintiff adds that Mr. Brallier's conduct was grossly negligent and in bad faith, as Mr. Brallier was allegedly in a position to have knowledge of the interest calculation formula and to recognize the accounting error prior to execution of the Redemption Agreement. (*Id.* ¶¶ 53–54). Third, Plaintiff alleges it was harmed by virtue of "overpayments [to Mr. Brallier] exceeding $1,336,683.18, loss of capital, and legal fees incurred to address Defendant's wrongful conduct." (*Id.* ¶ 55).

In his Rule 12(b)(6) Motion to Dismiss (ECF 15-1), Mr. Brallier does not seriously contend that he did not owe fiduciary duties to Wholesale Millwork, its members, or the Wholesale Corporation. (ECF 15-1 at 16–17). Rather, Mr. Brallier argues that he did not have "a fiduciary duty to have consulted [sic] an outside accounting firm—or any professional—to verify the buyout values provided by Plaintiff's internal accountant." (*Id.* at 17). He adds that, because he was no longer employed by Wholesale Millwork at the time he began accepting payments under the Redemption Agreement, he did not owe Wholesale Millwork any fiduciary duties at all. (*Id.*).

As explained above, Maryland law has long recognized that managing members[11] of an LLC owe common law fiduciary duties to the LLC and its other members based on agency principles. *See Cherneski*, 469 Md. at 625, 231 A.3d at 482; *Wasserman v. Kay*, 197 Md. App. 586, 616, 14 A.3d 1193 (2011). Indeed, "managing members are clearly *agents* for the LLC and each

[11] The pleadings do not yet clarify whether Mr. Brallier was considered a *managing* member of Wholesale Millwork, in addition to his position as General Manager of Wholesale Millwork and his role as President of the Wholesale Corporation. *See* (ECF No. 1 ¶ 1 ("Brallier is a former president of Wholesale Millwork, Inc. . . . as well as a former General Manager and member of Wholesale Millwork."); ECF No. 15-1 at 1–2). However, because it is uncontested that Mr. Brallier served as General Manager of Wholesale Millwork at the time that his membership interest was valued and the Redemption Agreement was executed, *see* (ECF No. 1 ¶ 1; ECF No. 15-1 at 1), this Court assumes without deciding that Mr. Brallier would be considered a managing member of Wholesale Millwork under Maryland law, with the attendant fiduciary duties that such a role imposes, for purposes of this analysis. *See also Froelich v. Erickson*, 96 F. Supp. 2d 507, 526 (D. Md. 2000) (noting defendant, as director of LLC, owed fiduciary duties to the Members).

of the members, which is a fiduciary position under common law." *Wasserman*, 197 Md. App. at 616, 14 A.3d at 1210. "Because no Maryland statute precludes, or even limits, managing members' fiduciary duties under common law, those underlying duties apply." *Id.* at 616, 14 A.3d at 1211. Indeed, "[i]f the plaintiff describes a fiduciary relationship, identifies a breach, and requests a remedy historically recognized by statute, contract, or common law . . . the court should permit the count to proceed."[12] *Cherneski*, 469 Md. at 625, 231 A.3d at 482.

Plaintiff has plausibly alleged the existence of a fiduciary relationship between Wholesale Millwork and Mr. Brallier, a breach of those fiduciary duties by Mr. Brallier, and harm to Wholesale Millwork as a result. Accordingly, Mr. Brallier's Rule 12(b)(6) Motion to Dismiss is DENIED as to Count Three.

### D. Count IV – Unjust Enrichment

In Count Four, Wholesale Millwork pleads an unjust enrichment claim as an alternative to its breach of contract claim under Count One. (ECF No. 1 ¶¶ 56–60). As Judge Hollander of this Court has previously noted, "an unjust enrichment claim deprives the defendant of benefits that would be inequitable for the defendant to retain." *State Farm Mut. Auto Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 560 (D. Md. 2019). A claim for unjust enrichment under Maryland law requires three elements: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make

---

[12] Under Count Three (Breach of Fiduciary Duty), Plaintiff requests as relief compensatory damages in excess of $75,000, punitive damages, reasonable attorneys' fees, and pre- and post-judgment interest on all sums awarded. (ECF No. 1 at 12). Although the then-Maryland Court of Special Appeals previously held that claims for breach of fiduciary duty can only seek equitable relief rather than damages at law, *see Wasserman*, 197 Md. App. at 631, 14 A.3d at 1219, that holding was expressly overruled by the then-Maryland Court of Appeals in 2020, *see Cherneski*, 469 Md. at 588, 625, 231 A.3d at 459, 482.

it inequitable for the defendant to retain the benefit without the payment of its value. *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295, 936 A.2d 343 (2007) (quoting *Berry & Gould, P.A. v. Berry*, 360 Md. 142, 151–52, 757 A.2d 108 (2000)). "A successful unjust enrichment claim serves to 'deprive the defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits quite honestly in the first place.'" *Id.* at 295–96, 936 A.2d 343 (quoting *Dep't of Hous. & Cmty. Dev. v. Mullen*, 165 Md. App. 624, 659, 886 A.2d 900 (2005)).

Here, the Complaint (ECF No. 1) plausibly alleges all three elements of an unjust enrichment claim. Plaintiff alleges that it has paid Mr. Brallier since 2023 pursuant to an ongoing payment schedule in which alleged overpayments would amount to $1,336,683.18 over the lifetime of the agreement (ECF No. 1 ¶¶ 57, 59), that Mr. Brallier has voluntarily accepted these payments (*Id.* ¶¶ 57–58), and that Mr. Brallier's retention of these payments under the present circumstances would be wrongful because the payment amount was calculated on the basis of an internal accounting mistake of which Mr. Brallier was allegedly aware but failed to disclose (*Id.* ¶¶ 58–60).

In his Rule 12(b)(6) Motion to Dismiss (ECF No. 15-1), Mr. Brallier argues that the existence of two valid contracts, the Redemption Agreement and the 2018 Operating Agreement, preclude an unjust enrichment claim. (ECF No. 15-1 at 18–19). It is well settled in Maryland that "a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties." *AAC HP Realty, LLC v. Bubba Gump Shrimp Co. Rests., Inc.*, 243 Md. App. 62, 72, 219 A.3d 99 (2019) (quoting *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 96, 747 A.2d 600 (2000)).

As Judge Hollander of this Court noted in *Transamerica Premier Life Ins. Co. v. Selman & Co., LLC*, 401 F. Supp. 3d 576 (D. Md. 2019),

> Unjust enrichment is a quasi-contractual cause of action that is a remedy to provide relief for a plaintiff when an enforceable contract does not exist but fairness dictates that the plaintiff receive compensation for services provided. The general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests.

401 F. Supp 3d at 597.

Here, there does not appear to be any genuine dispute that the Redemption Agreement, at a minimum, is an enforceable contract, and that the Redemption Agreement concerns the same subject matter as Plaintiff's unjust enrichment claim. Plaintiff asserts that it would be inequitable for Mr. Brallier to retain the $1,336,683.18 in alleged overpayments made or to be made by the Plaintiff over the lifetime of the Redemption Agreement if the Agreement and accompanying payment schedule are not reformed before then. This claim turns on Plaintiff's obligation to continue to make payments to Mr. Brallier and the amount of those payments, both of which are plainly governed by the express terms of the Redemption Agreement.

However, Plaintiff has made a plausible claim that the terms of the Redemption Agreement do not accurately reflect the parties' intent during negotiations, and it disputes its present obligations under the Redemption Agreement. This Court has long recognized that an unjust enrichment claim may proceed as an alternative to a breach of contract claim "where there is a dispute as to the existence of a contract as a whole, the subject of the contract, and even the terms of the agreement." *John M. Floyd & Assocs., Inc. v. Howard Bank*, No. RDB-18-2887, 2019 WL 1755968, at *2 (D. Md. Apr. 18, 2019) (citing *West v. Koehler*, No. RDB-11-3051, 2012 WL 868657, at *6 (D. Md. Mar. 13, 2012)). Although neither party challenges the

existence of the Redemption Agreement or its subject matter, the parties dispute how much Wholesale Millwork is obligated to pay to Mr. Brallier during the lifetime of the Redemption Agreement: Wholesale Millwork argues that its monetary obligation is limited to $4,872,028.25, (ECF No. 1 ¶¶ 30–31, 38), while Mr. Brallier contends that he is owed $6,238,711 for the buyout of his membership interest (*See* ECF No. 15-1 at 7–9 (arguing that the formula from the 2018 Operating Agreement was not used in the valuation of Mr. Brallier's membership interest and that Mr. Brallier is entitled to the full initial buyout figure because it was negotiated by the parties).

As there is a dispute as to the terms of the Redemption Agreement at issue, and given the early stage of the litigation, quasi-contractual claims may be brought in the alternative to Plaintiff's breach of contract claim. Accordingly, Mr. Brallier's Rule 12(b)(6) Motion to Dismiss is DENIED as to Count Four.

## II. Defendant's Motion to Dismiss for Failure to Join Necessary Parties

Under Federal Rule of Civil Procedure 12(b)(7), a defendant may move to dismiss a complaint for failure to join a required party under Federal Rule of Civil Procedure 19. Fed. R. Civ. Proc. 12(b)(7). Rule 19 "sets forth a two-step inquiry for a district court to determine whether a party should be joined in an action." *Peterson*, 169 F.4th at 525 (quoting *Nat'l Union Fire Ins.*, 210 F.3d at 249). "First, the district court must determine whether the party is 'necessary' to the action under Rule 19(a)." *Id.* If the court determines that the party is "necessary," the court must then inquire whether the party is "indispensable" under Rule 19(b) such that the "proceeding [cannot] continue in that party's absence." *Id.* (quoting *Keal Driveway Co.*, 173 F.3d at 917–18). "If the nonjoined party is necessary and indispensable to the action,

but joinder would destroy subject matter jurisdiction, the court must dismiss the action." *Gunvor SA*, 948 F.3d at 218–19 (citing *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999)).

Under Rule 19(a), a non-party must be joined as a party to the litigation if their joinder would not deprive the federal court of subject matter jurisdiction and: (1) the court cannot accord complete relief among the existing parties in the non-party's absence, or (2) the non-party claims an interest in the action such that disposing of the action in their absence may (i) impede the non-party's ability to protect their interest or (ii) leave an existing party subject to a substantial risk of incurring multiple inconsistent obligations due to that non-party's interest. Fed. R. Civ. Proc. 19(a). This determination is "a fact-specific inquiry that considers various factors relevant to assessing the fairness of proceeding without [the non-party]." *Martorello*, 143 F.4th at 561 (citing *Nat'l Union Fire Ins.*, 210 F.3d at 250). There is no "procedural formula" for engaging in a Rule 19(a) analysis, and instead, courts "must take into account the possible prejudice 'to all parties, including those not before it.'" *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 433 (4th Cir. 2014) (quoting *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 119 n.16 (1968), then quoting *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 441 (4th Cir. 1999)). The burden of proving necessity lies with the moving party—here, Mr. Brallier. *Peterson*, 169 F.4th at 525.

For the reasons set forth below, the existing shareholders of Wholesale are not necessary parties to the present matter under Rule 19(a) such that this case should be dismissed pursuant to Rule 12(b)(7). Having concluded that the existing shareholders are not necessary

parties under Rule 19(a), this Court does not have occasion to engage in the indispensability analysis set forth under Rule 19(b).

A non-party may be necessary to an action under Rule 19(a)(1)(A) or (B). Under Rule 19(a)(1)(A), a non-party is necessary to an action if the court is unable to afford complete relief to the existing parties in the non-party's absence. Alternatively, under Rule 19(a)(1)(B), a non-party is necessary to an action if they claim an interest relating to the subject of the action and their absence would, as a practical matter, (i) impair or impede their ability to protect their interest, or (ii) place an existing party at substantial risk of incurring multiple inconsistent obligations because of the non-party's interest.

Mr. Brallier argues that, under Rule 19(a)(1)(A), Wholesale Millwork's current shareholders must be joined to the present action because this Court could not afford complete relief in their absence. (ECF No. 16-1 at 10–11). The crux of Mr. Brallier's argument is that, although Wholesale Millwork's Complaint (ECF No. 1) only seeks reformation of the Redemption Agreement, this Court could instead order recission of the Redemption Agreement. (*Id.*). According to Mr. Brallier, if the Court orders recission, Maryland law requires that he must be restored to the status quo prior to the execution of the Redemption Agreement, meaning his 21.2152 membership interest would be returned to him and thereby proportionally reduce the interests of Wholesale Millwork's other shareholders. (*Id.* at 11–12). Thus, Mr. Brallier contends that this Court could not restore his membership interest in the event of recission without first joining Wholesale Millwork's remaining shareholders. (*Id.* at 12).

In response, Wholesale Millwork asserts that it is not seeking recission of the Redemption Agreement and that, even if this Court ordered recission, Maryland law would not require automatic reinstatement of Mr. Brallier's membership interest to the detriment of Wholesale Millwork's other shareholders. (ECF No. 21 at 18). Wholesale Millwork directs this Court's attention to Maryland's Limited Liability Company Act, Md. Code Ann., Corps. & Ass'ns §§ 4A-101 *et seq.* ("LLCA") (*Id.* at 18 n.3). According to Wholesale Millwork, under the LLCA, membership status exists only as provided in the company's Operating Agreement, and once a person ceases to be a member of the LLC, re-admission to the LLC requires affirmative action in accordance with the Operating Agreement. *See* Md. Code Ann., Corps. & Ass'ns § 4A-601 ("[A] person may be admitted as a member . . . upon compliance with the operating agreement or, if the operating agreement does not so provide, upon the unanimous consent of the members."); *id.* § 4A-606 (listing events which facilitate cessation of membership in an LLC). Thus, Wholesale Millwork contends that neither reformation nor recission necessitate joining Wholesale Millwork's existing shareholders to this action.

Initially, the Court notes that the Complaint only seeks reformation of the Redemption Agreement, not recission. (ECF No. 1 at 9). As explained above, this Court cannot determine whether Wholesale Millwork is entitled to reformation at this stage; however, it is plain that the presence of Wholesale Millwork's shareholders is not required even if reformation were ordered. Wholesale Millwork correctly notes that this Court could determine (1) whether the 2018 Operating Agreement mandated a particular valuation formula; (2) whether that formula was misapplied, (3) whether the Redemption Agreement must be reformed to reflect that valuation formula; and (4) whether Mr. Brallier has been overpaid as a result, all without the

presence of additional parties. (ECF No. 21 at 19). Reformation of the Redemption Agreement would only bind the parties to the original agreement—Wholesale Millwork and Mr. Brallier—and it would not implicate the membership interests of Wholesale Millwork's existing shareholders. *See Wiseman v. First Mariner Bank*, No. ELH-12-2423, 2013 WL 5375248, at *51 (D. Md. Sep. 23, 2013) ("Reformation differs from recission in that a reformed document remains in force and effect, but in a modified form, so as to reflect the parties' true intent.") (internal citation omitted).

Second, even if recission of the Redemption Agreement were ordered, this Court can find no authority under Maryland law to support the contention that Mr. Brallier's membership interest would be automatically reinstated and the interests of the other shareholders automatically reduced. Maryland's LLCA does not set forth such a remedy. *See generally* Md. Code Ann., Corps. & Ass'ns §§ 4A-101 *et seq*. Additionally, while Mr. Brallier cites this Court's opinion in *Brown v. NVR, Inc.*, No. PJM-10-1002, 2011 WL 2148793 (D. Md. May 31, 2011) in support of his argument, he ignores that restoration to the status quo may be accomplished "either by returning or by offering to return" what Wholesale Millwork received under the contract. *Brown*, 2011 WL 2149793 at *5. That language suggests affirmative action on behalf of Wholesale Millwork, which could be accomplished without implicating the interests of *all* other shareholders. In any event, neither *Brown* nor the LLCA contemplate *automatic* reinstatement of Mr. Brallier's membership interest by operation of law upon an order of recission by this Court.

This Court is clearly able to afford complete relief to the existing parties in the absence of Wholesale's existing shareholders such that the shareholders are not necessary parties under

Rule 19(a)(1)(A). Mr. Brallier does not argue in his Rule 12(b)(7) Motion to Dismiss that the shareholders are necessary under Rule 19(a)(1)(B), which mandates joinder if the shareholders' absence would subject Mr. Brallier to multiple or inconsistent obligations, nor can this Court conceive of a scenario in which this risk could materialize on the facts alleged. As Mr. Brallier has not met his burden of proving Wholesale Millwork's shareholders are necessary under Rule 19(a), this Court does not reach the indispensability inquiry under Rule 19(b). Accordingly, Mr. Brallier's Rule 12(b)(7) Motion to Dismiss is DENIED.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss for Failure to State a Claim (ECF No. 15-1) and Defendant's Motion to Dismiss for Failure to Join Necessary Parties (ECF No. 16-1) are DENIED.

A separate Order follows.

Date: September 11, 2026

/s/
Richard D. Bennett
United States Senior District Judge